May I please report? This en banc court should overrule Acades v. Apple for two reasons. First, that decision failed to honor the historical presumption of reviewability that has been the law under Supreme Court precedent for more than 50 years. Second, the court in Acades failed to divine congressional intent to limit review. The cases are clear down through the decades that it is necessary for the court in order to determine whether Congress intended to overcome the presumption that the court examine the text of the statute in question, examine the legislative history, and examine the structure, objective, and history of the statutory scheme. None of those things were done by the court in Acades. And when we see that we go through that analysis, it will become clear that there is no congressional intent to limit review of the time bar in the America Invents Act. Your friends on the other side argue, looking at the entire goal and purpose of the AIA, that the principal purpose, and there's a lot of legislative history to support that, is to allow challenges, efficient challenges, to patents that should be arguably invalid. And that given that purpose, it should not be stifled or foreclosed or messed with in terms of allowing reviewability of these, what they call, technical questions. What's your response to that? Certainly there can be no question that one of the preeminent objectives of the inter-parties review provisions of the America Invents Act was to provide an inexpensive and quick means of determining patent validity. We must remember, though, that that was deemed to be beneficial not only to those accused of infringement, but to patent holders who would have recourse to a rapid, efficient, and cost-effective means of quieting title to the patent. The prosecution history, though, is replete with rich evidence of the careful balance that Congress sought to achieve on the one hand between providing an efficient, cost-effective means of challenging bad patents, but on the other hand of protecting patent owners from unnecessary cost, delay, and harassment. And the chief tool for accomplishing that was the time bar that eventually became 315B. We have here a decision by the Supreme Court in CLOSA saying that the presumption had been overcome and that Congress had, in fact, precluded judicial review. And it addressed itself to 312A3. What is the difference between 312A3 and the provision that we're dealing with here? 312A3, of course, deals with the requirement that the petition state the claims attacked with particularity. And the Supreme Court pointed out in CLOSA that that is an exercise that really presents simply a legal question within the special expertise of the patent office. And the question, obviously, is, in that case, what is the relationship between – What's the difference between 312A3 and the provision we're dealing with here? The provision we're dealing with here does not present a purely legal issue. It's an intensely fact-bound issue of whether or not there is privity or party and interest relationship, in this case, between Broadcom and the Texas defendants. What about the other provisions of 312? Are they also not subject to the appeal bar, in your view? For example, the payment of the fee, identifying real parties and interests. Are those channels that belong to you? Payment – I think that the Supreme Court was at some pains to caution us that its decision in CLOSA was carefully limited just to the issue there. What's your view? My view is that – Suppose somebody allegedly fails to identify the real party and interest. Is that subject to the appeal bar or not? It would be subject to the appeal bar of – in connection with the director's institution. It would be subject to review for the shenanigans that the Supreme Court identified. For example, if the court were to decide that failure to identify the real parties and interests rises to the level of the agency acting outside of its statutory authority, then it would be reviewable. What would it be reviewed? Let's assume that there is privity and so that there is a violation. If institution is denied, the fact that it should not have been requested at all really is irrelevant. Isn't that right? Yes. So this arises only if institution is granted. Correct. Now, at what stage then would this be raised by mandamus or would it wait for the entire trial and then after it's all over, depending on who wins or who loses, the question would be raised that it should never have been granted. How would that work in practice? In practice, under the statute, the director makes the decision about institution. Now, we know that that has been delegated by regulation, but the statute, of course, provides that it's the director that makes the decision. And under 314B, that decision is final and non-reviewable subject to the shenanigans of COOSO. Then we proceed to the second stage of the inter-parties review, the trial by the PTAC. The issue of privity is still alive at that stage, is frequently addressed by the PTAC in practice. In fact, a quick research of PTAC decisions shows over 50 instances in which the PTAC has considered the issue of the time bar. So the PTAC then would consider the question of privity? Yes. And then it would receive judicial review after the PTAC's final decision? Correct. What if it's not addressed by the board in the trial? Or what if it's not addressed by the board in its final written decision? Then there certainly would be an argument that if it's not in the final written decision, it's not appealable. But I would point out that that is probably an unrealistic hypothetical because the party alleging the time bar has the ability to raise that issue during the trial stage. And while it cannot force the board to make that a part of the final written determination, it would be reviewable error under the Administrative Procedure Act for the board to refuse to provide a written basis for its decision. And, indeed, we've seen a case within the last two weeks where this court reversed the board for exactly that reason. Should we be concerned that because it's only reviewable under your theory but in connection with the final written decision, that if the PTO errs on the other side with respect to the time bar, in other words, improperly imposes the time bar, that there is no review? Isn't there some asymmetry there? That was addressed. Certainly, we could be concerned about that. But I think that it was in Cuozzo where one of the justices pointed out that although that's a risk and there is some loss there to the challenger who no longer has the advantage of the inter-party procedure, who doesn't have the advantage of a favorable standard of proof by a preponderance of the evidence rather than clear and convincing evidence, they nevertheless do have recourse to going to district court. In contrast, the patent owner stands to lose their important property rights. They can go in district court to do what? To challenge the PTO's action? No, to challenge the validity of the patent. If threatened. Sorry? If threatened. Well, if threatened, although we all know that under the current state of the law, that's a fairly low bar to get across these days. But that's true. They would have to satisfy the threshold requirements of the Declaratory Judgment Act. The time bar appears to be a threshold issue. It's got the characteristics of a threshold issue. Why would it be addressed at the outset, then again at trial? I mean, why get to trial if there's no basis, no legal basis by which to proceed? Well, the simple answer, Your Honor, is that's the structure that the statute created. 314 in every section directs us to the decisions of the director and provides that the director institutes and that that decision is final and non-appealable. Then we proceed to the second stage. And this court in Versada made very clear that those are two distinct stages. They are distinct agency actions so that there is a threshold decision to initiate. Congress chose to make that non-reviewable. But then there is a trial in which discovery may be allowed, in which parties raise issues, such as timeliness, if they choose to raise it, which must be decided by the PTAB. So it's at that stage that the decision is made that Congress did not obviate review and that therefore is subject to appeal. Can you clarify for me, then, if the board changes its mind on privity and in its final written decision says no privity so time bar applies, can the challenger, the petitioner, appeal to us and seek review of that decision? The final decision? Yes. And, Your Honor, if I may elaborate slightly, the critical analytical danger that Your Honor's question poses is when you ask can the board, which initially decides that the time bar does not apply, makes that decision and then the board changes its mind. Remember that under the statute it's not the board that makes that initial decision, it's the director. And while we know that by regulation that decision has been delegated by the director to the board, in our analysis of the text of the statute and the statutory scheme, it is critical that we keep in mind the fact that that initial decision is made by the director, not the board. So just to be clear, though, if after the trial the board rules the director got it wrong and time bar here applies, do you think the challenger can appeal that to us and we can reverse that and send it back down to the board and say, no, you're wrong, you should have a trial on this? I'm sorry, I got lost there.  Let me try to clarify. It seems to me your position is whatever happened at the director stage, if this issue of privity in the time bar is decided by the full board, that that's appealable to us. I'm just trying to figure out if you think that's appealable to us only by patentees or by petitioners who may lose that issue at the board. At least as the law stands now, well, to the extent that the PTAB is able to make law, it is the practice and regulation within the PTAB that the decision that the proceeding, the interparty proceeding is time barred is not appealable. That's not answering my question. Their position is it's not appealable for any of you. I'm trying to figure out if you're trying to carve out a right only for patentees to appeal the final decision on time bar or if you agree that given your logic that we can review anything in the board's decision about time bar, if the board rules for you and reverses the director's initial decision, whether the petitioner can appeal. Well, Your Honor raises a good point. 319 provides that a party dissatisfied with the final written decision of the Patent Trial and Appeal Board may appeal. So is that a yes? I don't want to take up any more of our time. I'm sure my colleagues have questions, but it seems to me like that's a yes. I think so. Well, but that does not take into account 318A, which is the predicate for getting to 319, and that distinguishes between final written decisions and dismissals. And I just wonder if you have a dismissal, it sounds like that doesn't trigger the right to appeal under 319, as opposed to a final written decision. And a dismissal presumably would be the case that Judge Hughes put of a petitioner who gets kicked out on time and dismissal. Also a good point, Your Honor. 318 does say if an inter-parties review is instituted and not dismissed. And not dismissed. That's what it says, and it's dismissed. So that would seem to keep the petitioner in Judge Hughes' hypothetical from being able to challenge. And yet, again, the language of 319 is a party dissatisfied with a final written decision under Section 13, 318A. Right, but that final written decision issues only if there's not a dismissal. If there's not a dismissal. Which means it would seem to me that that means that 319 isn't triggered by a dismissal. I have to concede that's a persuasive argument, Your Honor. And the consequence of that would be what I think it's my understanding that the PTAB has already concluded, which is that their decision that the time bar applies is not appealable. And therefore, we're back into the analysis that we discussed. But couldn't the dismissal reference in 318 be a reference back to 317 where the PTAB is left with the option to either choose to dismiss or to go forward in the absence of the ongoing presence of the petitioner. And so that that kind of dismissal is what they're contemplating in 318 versus the dismissal that might be on jurisdictional grounds. Because the jurisdictional discussion would be incorporated in some decision by the PTAB versus a non-action. That well may be, Your Honor. And if I may be permitted. So where do you come out? Can the petitioner appeal if there's a dismissal on the basis of a time bar or not? I don't know, Your Honor, because that case has not arisen. And if I may be permitted, I would pose this question to this en banc court. Who is going to decide that issue? According to the government, it's individual panels of the PTAB with no board of appeals anymore. No one within the PTAB able to achieve consistent decisions on the questions exactly like these. No, no, no. According to the government, it's not individual panels. It's the director because on the list of shenanigans, the director, if the director doesn't like a decision and someone seeks an expanded panel, can appoint judges who take a different position which is more in line with what the director wants. So in the long run, what you're really saying is it's the director who decides it as opposed to this court. Well, the director, I'm now not talking about timeliness. I'm talking about the multiple issues that we've just heard inquired. Appealability is going to be decided by this court, right? That's not a matter for the court. Yes, appealability will be decided by this court. But my point, Your Honor, is does the legislative history and structure of this statute suggest clearly and convincingly that it was Congress' intention that this court should not have the ability to exercise review over the kind of issues we've just been discussing? Which says that some issues closely related to the institution decision as well as the institution decision itself are barred from appeal. It did say that, of course, Your Honor. But this is an issue that is different from the pleading with particularity issue in that case as we've already discussed. It involves factual determinations. It exists throughout the pendency of the proceeding. Mr. Cawley, how should we look at the interaction between the quoso majority and dissenting opinions? As I read the dissenting opinion, it seemed clear that the dissent took pains to go through the three-tiered structure of IPRs, CBMs, PGRs, and the timing limits involved with IPRs and PGRs and explain how, in its view, the majority decision precludes review of these time bars in 315. And then the majority didn't speak to that question. It did speak to the dissent's question about whether indefiniteness can be invoked in an IPR, but it remained silent about the dissent's lengthy commentary on the majority's arguable ban on review of the time bar issue. So how do you think we should be reading these two opinions together? Well, the dissent in quoso proposed that the purpose of 314B was to prohibit interlocutory appeals of the director's institution decision, but that that decision by the director could be appealed once the proceeding was final. That was rejected. That's not what we are urging. It is our contention that, absent shenanigans, that the decision to institute by the director under 314B is final and not appealable. But then the timeliness and time bar issue goes to the entire board, and that decision is appealable. So that's not an interlocutory review of the director's decision. It's not a review of the director's decision at all. It's a review of the PTAB's decision. The point is the dissent said the majority's decision would bar appeal of the time bar. The question is what to make of that. Well, I think the best we can make of it here is I'll revert back to the majority's repeated cautioning that they were deciding only the narrow issue of the appealability of the particularity requirement and not any other issues. That suggestion that the time bar might be barred, I think, does not stand up under analysis because it's a separate proceeding than the institution decision. You are into your rebuttal. Thank you, Your Honor. Thank you. Chief Judge Prost, and may it please the court, I'd like to start right where we ended there with addressing Judge Chen's question and questions of Judge Dyke. How do we view the colloquy between Justice Alito and the majority? And I think the majority answers it and answers it quite clearly. The majority in Clozo says, nevertheless, in the light of 314D's own text and the presumption favoring review, on the other hand, we emphasize that our interpretation applies where the grounds for attacking the decision to institute consist of questions closely related to the application and interpretation of statutes related to the patent office decision to institute IPR. The majority clearly addresses Justice Alito's concern. Why do you think in that passage it then quotes Section 314D and then italicizes the phrase under this section? And I guess that's really the concern for me is what to make of the Congress' usage of the phrase under this section. Certainly. So to address the under this section, the Supreme Court, that's in the parenthetical. They didn't establish whether that's the standard. They didn't say that the standard is whether it's under this section or not. But why did they choose to make that phrase pop by italicizing it? I can't answer why they chose to italicize it. However, but that is in the parenthetical. What they did is they stressed and they emphasized what the test is. But the section language isn't stuff that the Supreme Court made up. That's the statutory language of 314D. So whether or not you think they emphasized it or not, that is the language of the statute. It is the language of the statute, but the Supreme Court's guidance is not limited to issues under 312. It says it applies, they emphasize that it applies to other statutes that are closely related to the decision to institute. The 315 language that we're looking at is directed to whether the patent office may or may not institute. It is even more directly related to the institution decision than 312. 312, the phrase in 312 is the patent office may not consider the petition if it's not pled with particularity. 315 says in verbatim that the patent office may not institute. It is more closely related to the decision to institute than even the 312A3 provision that COSA was dealing with. We're not concerned with situations where an institution is denied. We have a situation, there it's clear, you just go back to the district court or wherever you might be. But we have a situation where institution is granted. Why doesn't it meet the definition of shenanigan if, in fact, institution is requested by an entity plainly in privity with some other entity? That is a facial violation of the statute. So the Supreme Court and the Keddies left open the possibility for review by this court of shenanigans, of situations which facially, on its face, could be determined. And review could be available through mandamus. There are options for which this court can review those decisions that are clearly outside of the statutory authority of the agency. But the sort of day-in, day-out decisions, the fact-based decisions about do these sets of facts rise to the level of privity or not, Congress directed that to the discretion of the PTAC. The situation I described to your esteemed colleague where, in effect, the director puts his or her thumb on the outcome, shenanigan or not. It's within the written procedures. So your hypothetical is the director stacks the board? Yeah, more than a hypothetical. It happens all the time. It's a request for reconsideration with a larger panel. That's within the director's authority. The makeup of the board to review the petition is within director's authority, whether that rises to the level of shenanigans or not. Aren't there fundamental rule of law questions there? The basic things like predictability and uniformity and transparency of judgments and neutrality of decision-makers? And don't we review that kind of thing? Some of those decisions are reviewable, some are not. Certainly, if it rises to the level of a constitutional due process violation, the patent owner would have arguments available to it and avenues available to it to raise that. But short of a constitutional issue, an ultra vires issue, an issue that would warrant mandators, there's no direct appealability. Counsel, does the question whether the PTM has authority to proceed with a particular case, statutory authority, does that rise to constitutional questions? No. If your question is, does the determination by the board on a particular set of facts, whether there's privity or not, does that raise to a constitutional violation? The answer is no. What do you say in response to Mr. Cawley's argument that it may be that the institution decision itself is immunized from review, but not the decision of the board later following perhaps discovery or the denial of discovery that in fact the time bar has been satisfied? Why is that not outside of the institution related bar against appeals? I think the Medtronic versus Robert Bush case addresses that. The board can reconsider its institution decision during the course of the trial. It is certainly not required to get to that. It's not required to do so, but if it does, that is nothing more than reconsidering its institution decision. And Bush holds that that is... Statutorily, I mean, I understand there's been a delegation, but statutorily it's a different actor that's making the second decision from the first. The director, in theory, is making the first decision. The board is making the second. So in a sense, it's not statutorily a reconsideration. It's a new view of the same issue, right? It would be a new view of the same issue, but I think there's a distinction without a difference. The director is a member of the board by statute, and so there really is no distinction there. But we have said repeatedly at the PTO's request that there is nothing binding about that initial decision, so that anything that's said in that initial decision is not later binding on the board that is actually considering the question. And PTO has argued that position over and over, and we've accepted that proposition, haven't we? I believe you have, Your Honor, and my colleague from the board can address that more specifically. What about the fact that in CROZO itself, there wasn't just a reference to shenanigans or constitutional issues. There was a reference to the director acting outside her statutory authority, her statutory limitations. In 315B, it doesn't say no petitioner can request a petition if, in fact, the time bar applies. It says no IPR may be instituted, so that is directed to the entity or the person doing the institution, right? Correct, Your Honor. So if you institute in violation of that time bar, then, therefore, the director is acting outside her statutory limits, is she not? That could not be squared with CROZO. CROZO says statutory limits. Yes, but the provision in 312 says that the petition cannot be considered. It's equivalent language. Because CROZO said that 312 decisions could not be reviewed, the same argument applies for 316 decisions. I guess the court also said, though, that the 312A3 challenge, in its view, was little more than a challenge to the 314A reasonable likelihood determination. And, of course, that takes me back to 314D, the phrase under this section, and I feel like I need to give it some meaning, and I'm concerned that your position gives it no meaning. It's almost like the phrase could not be there, and under your version of the statute, it would have the exact same effect. And so now I'm trying to figure out why did Congress use the phrase under this chapter in 314D and then use under subsection A in 314C and then use under this section in 314D. It appears that Congress was quite sensitive to how it characterized that kind of phrase over and over again inside of section 314. And so the other side, at least, has what appears to be a plausible theory of the meaning under this section. It would be the reasonable likelihood determination under 314A. So why is it that the other side's view is not plausible as an understanding of under this section? Sure. Congress acted, and Congress acted specifically in dealing with a situation in which prior statutes said that the decision to, basically, the patentability decision was not reviewable. And we have to give meaning to Congress's actions here. When they crafted 314, they specifically took that out. In other words, it does not limit itself to the institution decision on the merits under 314A. Other provisions that still exist in other regimes and the predecessor of inter-parties re-exam have that. But under this section, it doesn't mean under this chapter. You have to agree with me on that, right? Well, I think what the outer bounds are, I don't think we have a clear sense of how far it goes. But the Supreme Court was clear in dealing with Justice Alito. Justice Alito said, under the majority's view, 315 decisions are just the type of decisions that would be barred. And the majority agreed. But the majority made it clear that they weren't deciding that question. And in fact, they said, as Judge Tan pointed out, that 312A was akin to something that was under the 314. And they talked about the closeness and the mind-run type of issue and how it is integrally related to the institution decision. I mean, they made it a very careful effort to say that they were not deciding that question. I think they made a very careful effort to not limit it to just decisions on the question of patentability and on the merits. And they did that in the colloquy with Justice Alito, and they said they emphasized their own words. We emphasize that our interpretation applies to statutes that are related to the institution decision. That is their holding. That is what they wanted to emphasize. There is language about this seems little more than a decision on whether to institute on the merits. But that was just in the discussion with Justice Alito in the colloquy. What they emphasized as their holding was that the question this Court has to ask itself is, is 315, is the time bar related to the decision to institute? And by its very language, it is. I think you're misreading CLOSO when you say that what they emphasize. They said they didn't say institution decisions. They said we emphasize that our interpretation applies where the grounds for attacking the decision to institute, which is a different thing. And the exact phrase is longer. In another place, they do say closely related, but perhaps they set up a two-part test. First of all, is the question that's being raised closely tied to the application of a statute related to the decision to institute? Y-5-1's argument is that it's closely tied, it's intimately tied to the question of whether the decision to institute was proper or not, or whether it was time barred under 315, which says that the Patent Office may not institute. Right. You said that our question is what does related mean, but the Supreme Court says closely tied to the institution decision, and then specifically differentiated that from other statutory provisions that are less closely related. So the question is what, if we have to interpret anything, it would be what is closely tied, right? Not just generally related. So the Supreme Court says the issue is whether the questions are closely tied to statutes related to decision to institute. So you first have to decide, is 315d a statute related to the Patent Office decision to institute? By its very language, it is. It defines the bounds in which a decision may not be instituted. It couldn't be more clear. Then the question is whether the issues being raised on appeal are closely related to that statute. And the issue on appeal here is whether 315 was complied with or not. Doesn't the language actually say less closely related? It doesn't just say is it closely related. It says we're not going to decide whether 314d applies to statutes that are less closely related. Why wouldn't that include 315? It doesn't include 315 because 315 says... You agree though it does say less closely related, right? In a different section, Your Honor. So in this section that I'm relying on... It's the next sentence. That is true. But it's not that... I mean the paragraph starts off with we emphasize. And the Supreme Court is emphasizing that the question is, is it closely tied? Is it related? And my argument is that 315 is even more closely related to the decision to institute. By its very words, it says the circumstance in which you may not institute... It's less closely related to 314a. And that 314a talks about determining whether there's a reasonable expectation that a claim would be invalid. And 311 talks about the petition, which is trying to show that. 315, on the other hand, is related to a different question, right? And this raises the issue that Judge Chen also raised, which is how do we deal with the other statutes which say, by their very terms, that the question relates to the issue of patentability. The statute doesn't say that it's the decision of patentability, and the Supreme Court didn't either. It didn't say the question is whether it's related to 314a. It most clearly didn't say that. It said it's whether it's related to the decision to institute. How I read it, I see them saying, hey, in response to the dissent, please know that we are not answering the question of whether this 314 bar applies to less closely related statutes. I believe that is what they said. But what they said to the dissent, Justice Alito said, the majority decision covers time bar issues and had some other questions about shenanigans, et cetera, and the majority in that colloquy addresses all of those other issues, except the majority never disputes Justice Alito's position that time bars are such statutes closely related and that time bars are not appealable, and they went on in this section to emphasize that point. Thank you. Good morning, Your Honor. May it please the Court, Mark Freeman for the government. I'd like to start with just this question about under this section in that key paragraph from Cuozo. Let me tell you what I think the Court was referring to there, and I think we can draw a lot from the two citations that the Court gave following the paragraph, the sentences that Judge Chen and Judge Stoll were discussing. The Court says we don't need to decide today what effect 314D has on constitutional questions or questions that go significantly beyond. Is this the CF site we're talking about? Yes, this is the CF site, Your Honor, and I think that's quite telling. The first case is Johnson v. Robeson. That was a case concerning the Veterans Administration statutes that preclude review of the award of certain veterans' benefits, and the reasoning in that case is about what the word under means in context like this, and what the Supreme Court said was, and this is in the Johnson case, a decision under a statute concerning precluding review of veterans' claims. The fact that it's a CF site means that they clearly don't believe it's on point, directly on point. Your Honor, we are all here this morning trying to figure out what the Supreme Court meant by a couple sentences in this one section, and I would be glad to address later why I don't think we read this Supreme Court decision the way one reads a statute and tries to pick out particular sentences with the punctuation. There is a long discussion here, and the overwhelming impression from this Supreme Court decision is that the decision whether to institute is foreclosed from judicial review, but I do want to answer this question. Johnson v. Robeson is not just a, is, the reason why Justice Breyer cited that case is because it discusses what the word under means, what meaning we give to that when Congress says determinations under a section are foreclosed from review. And what the Court said there was a decision under the Veterans Benefits Statute is foreclosed from review, but we don't normally interpret that to mean, to include a constitutional challenge to the structure as a whole. That is not a decision under that section. And then it went on and also cited Treynor v. Turnage. Treynor v. Turnage, if you look at it, is another case concerning the same Veterans Benefits Statute, and in that case there were two arguments. The first was that the benefits awards were wrong, the benefit claims were wrongly denied, and the Supreme Court said, no, that's foreclosed by that Veterans Statute. But the second argument was that the Veterans Administration had been systematically denying veterans benefits claims against disabled veterans, and the argument was that was a violation of the Rehabilitation Act. The government argued that that, too, was foreclosed under the statute barring review of the Secretary's determinations. And the Supreme Court said in Treynor v. Turnage, no, that is a much less closely related statute. Section 504 of the Rehabilitation Act applies equally to all federal agencies. It's not a statute entrusted to the Veterans Administration to administer, and so we don't hold that that section, under this section language of the Veterans Statute, precludes that less closely related claim. Now, I think the fact that Justice Breyer pointed to those two cases gives us a pretty good clue of what the court meant in this paragraph. The court was saying, Section 314D precludes, as my friend emphasized, the application and interpretation of statutes related to the decision whether to institute. Now, that would mean that if, for example... In this case, there is no doubt that the party who filed the IPR is someone that was sued 18 months earlier. Yes. So they clearly are outside the one-year timing requirement. Yes. And suppose the office decided to nonetheless go forward. Would that be the shenanigans that the Supreme Court was talking about, or would you say that that related to the decision to institute is off-limits? I would say that the review that is available for that claim is mandamus, if at all. And I think mandamus would be available. I want to make clear, we are not here denying that if there's a clear and indisputable violation of the statutory command that a party can seek relief from this court and that this court can grant it. That is on mandamus review. Why wouldn't it be within the scope of the notion of ultra-vaccine, ultra-virus, and therefore appealable? Well, this is going to get a little federal court's wonky, Your Honor, but I think... We're here today. We're here today, yes. I think that the label under which that review would be available is Leadham v. Kine review for ultra-virus, a non-statutory review. The Supreme Court said in the Emcorp case in the 1990s that Leadham v. Kine review is typically not available where a statute specifically precludes review of the question. So I think that it may not ultimately matter because the relevant standard is the same. It is for clear and indisputable violations of rights. And furthermore, as the panel explained in the Acadia case correctly in our view, Leadham v. Kine review is not available for disputes over statutory interpretation questions. That would be, for example, here, whether this amounted to a claim of privity. But I'm not here disputing that Leadham v. Kine is a thing in the world or that particular types of violations may state that. Our point is that, and what I understand the en banc court today to be addressing, is whether in a routine case where the board has issued a 15-page single-space decision about the denial of discovery, an eight-page single-space decision about denying reconsideration of this question, and has reasoned that they failed to show privity, whether that routine run-of-the-mill application of a statute related solely to the question of institution is precluded by Section 314B. I'd like to ask you about the PTO's expertise. The PTO clearly has long-standing expertise in questions under 102 and 103. But prior to the AIA passage, what experience or expertise did they have at all in questions of privity? I'm not aware that they had to decide that question before, Your Honor, but that's not the issue here. I just was, while it might not be a question, it certainly is something that one might consider when thinking about whether there was a determination that review should not be had of these questions. At least as a policy matter. Let me address that. So first of all, the policy of whether to have 314B in the statute is, of course, not for any of us in this courtroom to determine. The second question is, the argument that Congress has referred to a common law term, and that common law term has meaning that it's not typically given to the agency's expertise to administer it. It's an argument one sees in ordinary administrative law cases. That's an argument that goes to whether an agency is entitled to Chevron deference. So that argument would be relevant, for example, if the PTO issued a regulation construing the term privity. This is not the issue that we have today. The issue we have today is, everyone agrees that Congress has said, Section 315B, if there's in privity and it's more than a year later, then they cannot institute review. But if the agency makes in a routine case a judgment about that question, can we later overturn the correct patentability decision on the grounds that the agency got that threshold question wrong? And I want to emphasize this point. The decision that we are all discussing this morning is only relevant or only matters if the agency has correctly canceled a claim in an issued patent that should never have existed in the first place. Well, Justice Alito suggests in his dissent, and it isn't addressed by the majority, that the court could always look to prejudicial error and conclude that, despite the fact that the petitioner may not have been the appropriate challenger, nonetheless, the public interest in the outcome prevails. Yes, and I think if Justice Alito's view had prevailed in the Supreme Court, we would be here making an argument along those lines. But, of course, it was a 6-2 decision in which the majority emphasized that its holding precludes the application and interpretation of statutes related to the decision whether to institute review. Again, you're missing my question, or the importance of my question. Wouldn't a court be able to, even if we decide this is not out of bounds under CLOSO, wouldn't we be able to decide that, in certain kinds of cases, there is no prejudicial error to the patentee who had a full and fair hearing and ultimately lost on the merits of their claim? The court might be able to reach that conclusion, Your Honor, and I don't want to dispute that because we may be here, if the court goes that way, we may be here arguing that. But I do want to emphasize, I would expect Y-5-1 or whoever is in its position in that case to say, well, Section 315B is an entitlement not to have been in this proceeding, and so, of course, it's prejudiced that our claims were invalidated. Mr. Kramer, can I ask, could this question come up if, on the merits, the board ruled for the patent owner, the petitioner appealed to us saying that that was wrong and the patent owner, as part of the defense on appeal, says this should never have been instituted, they were out of time? On our understanding of the statute, Your Honor, no, because the determination... You said earlier that this can only come up if the board has correctly found unpatentability. It seems to me that that's not quite right. Well, we could have that discussion at the right time. I would imagine there's a question about whether that's an alternative holding. Fair enough. You could have a discussion about whether that's an alternative ground that would lead to the same results and whether the judgment would be correct. There are doctrines that govern alternative arguments to be made on appeal, but let me concede the point for now. Let me just say, for present purposes, in many circumstances, of course, you need Article 3 standing for a petitioner to appeal, for example. In many circumstances, this will not matter, and my only point with respect to this was that this explains why Congress struck the balance it did. My friend got up this morning and started by talking about the balance struck by the statute. Congress did strike a balance. It said two things. First, we do not want the board to be instituting review in circumstances where a person with whom they're in privity was sued more than a year earlier, but we also do not want correct patentability determinations to be set aside later on appeal on the ground that that threshold decision was wrong, and this case illustrates that point. Why doesn't the 315B bar, though, represent Congress's choice in allocating power between the agency and the courts for reviewing and resolving patent validity disputes? And in that sense, it's a statutory limit on the agency's authority  If you come too late, then you as a defendant have to remain in the courts, according to Congress, but if you get in early, then you can go to the agency, and then ideally there will be many times the courts choose to stay their actions, which has in fact been going on. So there's this either-or situation that Congress is trying to create. Why isn't that what's going on here? And then therefore, when the agency violates the 315B bar, it is in fact exercising power outside the statutory limits. Let me address it this way. There are many ways Congress could have written the section 315 bar. We can all agree on that. It could have said, as it said in section 317, for example, 317A, that a proceeding instituted under this chapter shall be terminated with respect to a petitioner if, and it could have said if it turned out at any point that the party was in privity with someone sued more than a year earlier. It could have, to your point specifically, Your Honor, it could have said the Court of Appeals shall not have jurisdiction to review or shall set aside any decision if a person was sued in privity. But that's not what it said. Against the backdrop of a statute... It said it won't, it shall not be instituted. Exactly, Your Honor. It said shall not be instituted and also said the determination whether to institute shall be final and non-appealable. So Congress, on the one hand, said we want the agency to comply with this, and no one here is arguing specifically the office is not arguing that 315B does not bind the agency. Of course it does. That's the point of our representation concerning mandamus. But Congress also said that when, as here, you've got a patent claim that the three judges of the board panel held was anticipated or obvious and a panel of this court affirmed unanimously were anticipated or obvious, that we don't want that decision to revive those patents and send them back out in the world because of a technical error in the institution decision. And would your position be exactly the same if, in fact, what the PTAB does is to sustain patentability? Yes. The determination whether to institute is final and non-appealable. And I would add that the statute says, and there was some discussion with my friends earlier about where that determination happens to be recorded, in an earlier opinion or in the final written decision with respect to patentability. Nothing in the scheme turns on that question. Section 314B says the determination whether to institute, not a particular written opinion issued at a particular stage of the proceeding. If the board, acting as the delegee of the director, still wearing the director's hat, entertains a motion for reconsideration because new evidence has come to light, that ought to be to the credit of the agency for hearing people out. But if they conclude that the determination whether to institute was correct, well, that is still the determination whether to institute, and it is still foreclosed from judicial review. Do you have a view why Congress chose to use the phrase under this section in 314B as opposed to, say, under this chapter, like it used in 314B? Well, yes, Your Honor, I do have a view on that. Good. What is it? So, first, I think the Supreme Court, in quotes, will give us a reason. In the paragraph that I discussed, the Supreme Court was explaining that under this section has historical meaning and understood it has a particular residence in the law of judicial review. So that's one reason. I guess another way of asking it is, under your interpretation, does the phrase under this section do any work at all? I mean, as I understand your view, you could remove that phrase from 314D and it would operate exactly the way, again, that you believe the current statute operates. Well, not quite, Your Honor, and I see that I'm running out of time. If I may answer the question. The statute would not have the same meaning, in part, for the reasons that the Supreme Court explained in that paragraph in close-up, because under this section has a historically resonant interpretation under the Robinson case and the Treanor case. But in addition, every determination whether to institute under this section language emphasizes is that all institution decisions under this Act are made under Section 314. Institution decisions are not made under some other section of the Interparties Review Scheme. They are made under this section. And that is what gives effect to the congressional judgment to make all of the provisions that Congress chose to, didn't have to, but chose to frame in terms of limitations on the institution decision unreviewable. Then why didn't Congress place the time bar within 314A? Well, because the time bar, Your Honor, is, as we've explained in our brief, it is part of the... If this section deals with everything that pertains to institutions, why was the time bar placed in a separate section? Because, Your Honor, Congress was, throughout the patent, these provisions, addressing things in a logical order. Section 315 is about the relationship of... It's captioned, relationship to other proceedings. And it addresses the estoppel provisions... Well, then why didn't Congress say in this section and all other sections? So, maybe it's helpful to look at a juxtaposition with another section of the same statute. And I would draw the Court's attention to the derivation section, Section 135. In Section 135, there's a similar but tellingly different structure. It says 135A1 says the director may institute derivations if she finds the evidence that the patent invention may have been stolen and so on. That's Section 1. Section 2 says time-out. And then, I forget Section 3, but Section 4 says the director's determination under Paragraph 1 shall be found when non-appealable. So, here we have a section. The same statute, where Congress is enacted in the AIA, called out specifically an initial paragraph to be finally non-appealable and did not include the timing provision. Well, while you're giving us your opinion, if we overrule it, Katie, other than 315B, what else in Title 35 is impacted? Well, 315A, I would think, is a certain... And let me just answer the question this way. At a minimum, any provision that speaks to the institution decision. That's what COSO says. Secondly, I think generally, because I don't underestimate the creativity of patent lawyers, I think any time a person is coming to this court and saying, the patentability decision is correct or we're not appealing it, but we want the judgment of the patent office to be set aside because the threshold institution decision was wrong. We should never have had this question in the first place. That, I think, ought to give us a very strong clue that we are talking about an issue that is foreclosed from review by Section 314. And the point at which I'd like to end, if I may, is that this case, I think, illustrates the reasons why Congress would have wanted to foreclose review of these questions because, of course, the absent party here is the public interest. The patents at issue in this particular proceeding are asserted to cover the Wi-Fi wireless standard. All the judges of the Court of the Patent Trial and Appeal Board who addressed this question found them unpatentable. The panel of this court unanimously found them unpatentable. The public obviously has an interest in that question, and what Wi-Fi wants to do here is revive those patents on the ground unrelated to the patentability. We should base our decision on what we think about this particular patent? No, no, no. Or if it was a truck, we shouldn't make the same decision? No, Your Honor, and please don't misunderstand me. My point is, this case illustrates the reasons why Congress struck the balance that it did. It is because the public has an interest as well in the questions of patentability, and that public does not share that interest in the institution decisions. Congress wanted the agency to make decisions under 215. We can't forget the interest the public has in the presumption of judicial review. I agree with that, Your Honor, and the Supreme Court said, quoting Mock Mining and Block v. Community Nutrition Institute in the Cuozzo case, that standard is met here. Thank you. The course of the oral argument today has illustrated that the Supreme Court's Cuozzo decision presents a tempting but dangerous possibility of analytical error. What I mean by that is this. The temptation is to treat Cuozzo as standing for the proposition that the particularity requirement is not reviewable, and the Supreme Court has said that anything less closely related might be reviewable, and shenanigans would be reviewable, so that it becomes the analytical task of this court to try and answer the question, does the time bar of 315 fit into one of those exceptions that the Supreme Court told us about in Cuozzo? That is contrary to the analytical approach endorsed and followed by Cuozzo, by Mock Mining, by Block, and all the way back to Abbott Labs in 1967. The Supreme Court has been consistently clear down through the decades that the proper analytical approach is, first, a presumption of reviewability. Second, that that presumption is overcome only if there are clear and convincing indications of congressional intent to deny review. So is your position, even if there's a statute that bars judicial review, that Congress has specifically enacted, that we have to still weigh that statutory pronouncement against every specific detail of the statute with the presumption and say, this statute's in, this statute's out? Basically, yes. Why isn't Cuozzo found and said, generally no judicial review, or generally judicial review, sorry, but here we have a statute barring that. That meets the presumption. Now we just have to determine the scope of that bar, that the presumption is no longer in play. Respectfully, Your Honor, Cuozzo did far more than that. In addition to citing the requirement of finding congressional intent, it looked for congressional intent. That's the difference. You can't simply say, here's a statute. I don't understand that. They looked to it, and then they saw this bar on judicial review and said, the presumption has been rebutted here. And now that it has, what we're doing is determining the scope of that judicial bar, but not applying the presumption to weigh that scope on every single issue. Isn't that the right way to look at it? I agree with that, Your Honor. Maybe I misunderstood your initial question. My point is that the court did not simply pick up the text of the statute, read it, and conclude, therefore, that Congress intended to bar review. I mean, you helped a little bit, but I was confused by your answer in response to Judge Hughes. I felt like you were swinging at the fences when it's the bottom of the ninth and you've got a man on third and no outs. And it didn't make sense to me. So I was kind of wondering why your answer wasn't along the lines of judicial review is the rule unless there's a clear indication by Congress to the contrary, and here the under this section language is enough to dispel the clear indication. I think surely no reasonable spectator at this oral argument could conclude less than that language alone means that the question is not clearly and convincingly evident from the statute's text. In your view, what's left of the appeal bar after close-up? It applies to the reasonableness determination. It applies to 312A3. Does it apply to any other provision of the statute? It probably applies to some other provisions of 312. Which ones? Well, again, I have to say with honesty, I'm not sure that I have done the analysis necessary to decide those future cases. So apart from 312, the bar doesn't apply at all? There may well be provisions of 314 to which it would still apply. What about 312A2's requirement to identify real party interests? Does it apply to that? The honest answer is I don't know. I have not. That's fairly easy text to analyze. I have not investigated the legislative history relating to that particular provision and analyzed how it fits into the statutory scheme well enough to be able to say that it has been overcome or not. Go ahead. If you're right about 315B bar being reviewable and you're right that it was reviewable, does that mean that it would be reviewable by undoing the board's decision? Is there anything that would prevent the director from immediately instituting a re-examination of this? Director ordered re-examination? Not that I know of. We all know that that happens rarely and presumably for good reasons. We all, I'm sure, would believe that the director would have no agenda to try and evade the effect of this court's decision that the time bar is reviewable through that means. But the answer to your honest question is I think, yes, the director could do that. I'm sorry. Why would that be an invasion if what we're trying to do is to figure out whether there are certain boundaries on one particular program, one particular PTO program and enforce them? It's certainly relevant to consider the consequences of either defining or having review of the application of those boundaries that the sky is falling kind of consequences don't follow or do follow. And that would depend on whether there are other PTO remedies available. And for 102, 103 ex parte re-exam would seem to be right there. Well, I agree. I've said it is right there, Your Honor. My only point is that for whatever reasons, the director very rarely exercises her ability to have a director instituted re-exam. And I, for one, have no reason to believe that this court decided that the time bar issue is reviewable, that the director would have any reason or motivation to decide to undermine that reviewability by saying, well, I'll just institute review on my own. Your Honor, in the last few seconds of my time, I would just say this. Again, I think that any reasonable listener to this argument would conclude that there are legitimate issues here on both sides of this question. Certainly it has divided the court. Many members of this court have already spoken on this issue in the sense of concurrences. My question to you is this. Under those circumstances, can it fairly be said that there is clear and convincing indication of congressional intent to bar review? And I would urge the court to conclude that review is available and to exercise this court's historical function of review of executive actions. Thank you. Thank you.